IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODERICK D. WILLIAMS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil No.: 08-00513-CG-N |
| | : | Crim. No.: 04-00197-CG |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

REPORT AND RECOMMENDATION

This action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72.2(c)(4), and Rule 8 of the Rules Governing Section 2254 Cases. Petitioner, Roderick D. Williams, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255 (doc. 177, as amended doc. 186) and affidavits (doc. 187) supporting certain of his allegations. The government has responded (doc. 180) to the original motion and again (doc. 189) to the amended petition. Petitioner has replied (doc. 185) to the government's response to his original petition, and replied (doc. 198) to the government's response to his amended petition.

Petitioner raises several grounds for relief in his Amended Motion (doc. 186)[1]:

1) Denial of Right to Counsel and/or Ineffective Assistance of Trial Counsel; counsel allegedly gave privileged information to the government which was used against petitioner at trial;

2) Ineffective Assistance of Trial Counsel: failure to challenge multiplicitous counts;

---

[1] In his Motion for Leave to Amend his petition, petitioner made clear that he was amending his prior petition "in its entirety." Doc. 186 at 1; doc. 198 at 2 n.1. The amended petition supercedes his original petition.

3) Ineffective Assistance of Trial Counsel: failure to request instruction on definition of "Ice";

4) Ineffective Assistance of Sentencing Counsel: failure to challenge drug amount attributed to petitioner, and failure to challenge finding on "Ice" in absence of definition;

5) Ineffective Assistance of appellate counsel: failure to challenge indictment as multiplicitous, did not challenge attribution of 198 grams of methamphetamine as not supported by the evidence, and did not challenge sufficiency of the evidence for jury's finding of 36 grams of crystal methamphetamine or "Ice".

The court granted petitioner an evidentiary hearing and appointed counsel as to Claim One, only. (doc. 207; see also orders resetting hearing, docs. 212, 217)  The hearing was held before the undersigned Magistrate Judge on February 8, 2010.  Present at the hearing were Petitioner and his counsel, Robert Ratliff, Esq., and counsel for the government, AUSA Leigh Pipkin and AUSA Deborah Griffin.

On February 3, 2010, prior to the hearing, Richard Horne, Esq., petitioner's counsel for sentencing, filed a motion to quash a subpoena  (doc. 218) requiring his appearance and testimony at the hearing, on the grounds, in sum, of the attorney-client privilege.  The government filed an opposition to the motion along with a  Motion to Compel (doc. 219).  On February 4, 2010 counsel for petitioner filed a motion (doc. 220) in support of Attorney Horne's Motion to Quash.  The undersigned issued an order directing that the motions would be addressed immediately prior to the commencement of the hearing.  (Doc. 221) After hearing from the parties, the undersigned denied the motion to quash.  However, pursuant to the

authority articulated in Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001)[2] questioning of Attorney Horne was limited to matters concerning petitioner's understanding of and participation in the pretrial proffer.

## Course of Proceedings

Petitioner Williams and another defendant were indicted on October 7, 2004, in a four-count superceding indictment. Williams was charged in Count Two with conspiracy to possess with intent to distribute marijuana, and in Count Three with conspiracy with intent to distribute methamphetamine. On April 28, 2005, after a three-day trial, Williams was found guilty on both counts. Under Count Two, the jury found that he was guilty of conspiracy to possess between 50 and 500 kilograms of marijuana, and under Count Two of possession of between 50 and 500 grams of methamphetamine; of that amount, the jury found that petitioner was involved with 36 grams of "ice", a particularly pure form of methamphetamine.

After trial and before sentencing, Williams entered into a written post-conviction cooperation agreement with the United States. In this agreement, Williams agreed not to file any post-conviction proceedings, with limited exceptions including claims of ineffective assistance of counsel. (Doc. 109)[3]

---

[2] In Johnson, the Eleventh Circuit concluded that "[w]hen a defendant has challenged his conviction by asserting an issue that makes privileged communications relevant, he waives the privilege in respect to those communications. 256 F.3d at 1179; GAB Bus. Servs., Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir.1987) (A party "waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct.") In Claim One of his petition, Williams maintains that his trial counsel was ineffective on the grounds that he allowed the government to listen to a conversation between defendant and trial counsel without defendant's knowledge.

[3] The post-trial cooperation agreement contained a limited waiver of his right to challenge his conviction and sentence on direct appeal and collateral review, including pursuant

Williams was sentenced to 97 months imprisonment on each count, to run concurrently, three and five years of supervised release, respectively, to run concurrently, and a special assessment of $200. Williams filed several Notices of Appeal (docs. 138, 139 and 140). The Eleventh Circuit affirmed his conviction and sentence on August 30, 2007. His conviction became final on February 19, 2008, after the Supreme Court denied his Petition for Certiorari. Williams v. U.S., — U.S. —, 128 S.Ct. 1322 (2008); *see* Clay v. U.S., 537 U.S. 522 (2003).

## Offense Conduct [4]

An investigation of illegal drug activity in Atmore, Alabama was started by the FBI with the assistance of the IRS. PSI ¶ 5. Sheldon McKenzie admitted to the FBI that he and others were selling marijuana, methamphetamine and cocaine in Atmore. (Doc. 160 at 22-25, PSI ¶ 8). One of McKenzie's suppliers was Jeff Jones, a friend who had moved to Atlanta. Doc. 160 at 26. Jones, acting as a middleman, purchased marijuana, cocaine and methamphetamine from Roderick Williams, who would then sell the drugs to McKenzie and others from Atmore. Id. at 35.

McKenzie and others would drive to Jones' house in Atlanta one to two times per week to purchase drugs. Id. at 48, 59. When McKenzie arrived at Jones' house, Jones called Williams, who would then come to Jones' house with the types and quantities of drugs that McKenzie had ordered. Id. at 35. McKenzie would pay Jones, and Jones would pay Williams for the drugs. McKenzie would then transport the drugs to Atmore for distribution. PSI ¶ 11. McKenzie usually

---

to 28 U.S.C. §2255. This waiver is subject to exceptions for punishment imposed in excess of the statutory maximum or in excess of the guidelines range, or a claim of ineffective assistance of counsel. Each of petitioner's claims asserts ineffective assistance of counsel.

[4] This section is taken *verbatim* from the government's brief.

purchased 10 to 15 pounds of marijuana, and 2 to 3 ounces of ice on each trip. Id. at 35-39. McKenzie either made these trips alone or at various times with Damien Mosley, Natalie Parker and Sharon McKenzie. *Id.* at 32. Jones admitted to being a broker for marijuana, methamphetamine and 'ice' between Williams and others. Id. at 187-189.

At one point, McKenzie cut out Jones as the middleman and began to purchase marijuana and ice directly from Williams. Id. at 41-43. McKenzie also sent Tony Brown and Damien Mosley to Atlanta to purchase drugs from Williams. Id. at 45-47. Overall, McKenzie purchased marijuana and ice from Williams between 50 to 60 times. Id. at 90. McKenzie only purchased ice, not powder methamphetamine, from Williams. Id. at 61.

Damien Mosley also purchased marijuana, methamphetamine and cocaine from Jones and Williams. Id. at 99. Mosley would call Jones or Williams, place an order for the drugs he needed and then travel to Atlanta to make the purchase. Id. at 102, 105-106. Mosley made 10 to 20 trips to purchase drugs from Williams and Jones. Id. at 102. On the average trip, Mosley would purchase 10 pounds of marijuana, 4 ½ ounces of cocaine, and 3 ounces of methamphetamine from Williams. Id. at 107. Shanye Godwin also purchased methamphetamine, ice, and cocaine from Jones for distribution in Alabama during 2004. Id. at 227-228. Godwin purchased a total of 8 to 16 ounces of methamphetamine or ice. Id. at 229.

Jeff Jones and Williams were subsequently indicted in the Southern District of Alabama. Doc. 8. Jones pleaded guilty to conspiracy to possess with intent to distribute methamphetamine. PSI at 3. Williams pleaded not guilty.

Legal Standard

*Habeas*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).[5]

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir.1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. Harris v. United States, 149 F.3d 1304, 1306 (11th Cir. 1998).

*Ineffective Assistance of Counsel*

Williams contends that he is entitled to habeas relief, on the grounds, in sum, that both his trial and appellate counsel were ineffective.  In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668 (1984). Under the performance prong, the relevant inquiry is whether counsel's representation was "objectively reasonable." Crawford v. Head, 311 F.3d 1288, 1311 (11th Cir. 2002).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 104 S.Ct. 2066. A petitioner can rebut this presumption only by proving his attorney's representation was unreasonable under prevailing professional norms.  Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc). "Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. (quotations and citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on

7

investigation." Strickland, 104 S.Ct. at 2066.

The petitioner's burden of demonstrating prejudice is high. Under the prejudice prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Instead, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Wellington, 314 F.3d at 1260 (quotations and citations omitted).

In Hill v. Lockhart, 474 U.S. 52, 58,106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the Strickland test applies to advice given by counsel in the context of guilty plea discussions. In the context of a claim of ineffective assistance of counsel as it relates to the entry of a guilty plea the Eleventh Circuit has opined, in part, as follows:

> Where an ineffective-assistance-of-counsel claim relates to the entry of a guilty plea, a movant "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir.1995) (quoting Hill v. Lockhart, 106 S.Ct. 366, 370 (1985)). In these cases, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 106 S.Ct. at 370. If the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead, then his allegation of prejudice is insufficient to satisfy Strickland. Id. at 371.

Davis v. U.S., 2009 WL 1598433 (slip opinion) (11th Cir. 2009)

*Evidentiary Hearing*[6]

"Unless the motion [under Section 2255 ] and the files and records of the case

---

[6] As previously set out herein, the undersigned granted petitioner an evidentiary hearing *only* as to Count One of the habeas petition.

8

conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255 . However, an evidentiary hearing is not required in every case.  For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir.1989);

- Where the claim is "based upon unsupported generalizations," id.;

- Where the petitioner has not "allege[d] facts that, if true, would entitle him to relief," Aron v. United States, 291 F.3d 708, 715 (11th Cir.2002);

- Where the facts alleged are not "reasonably specific [and] nonconclusory," id. at 714-15;

- "[W]here the petitioner's allegations are affirmatively contradicted by the record," id. at 715;

- Where the petitioner's version of the facts has already been accepted as true, Turner v. Crosby, 339 F.3d 1247, 1274-75 (11th Cir.2003); and

- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir.1983).

## Analysis

With this legal framework in mind, the court now turns to Petitioner's specific claims of ineffective assistance of counsel.

9

Violation of Attorney-Client Privilege

Petitioner's first ground for relief involves an attempt by his trial attorney to conduct a pre-trial proffer of evidence in furtherance of his attempt to obtain a plea deal for Williams. According to Williams, his trial attorney conducted a telephone conference with him, drew him out on his visit to a trailer used by drug dealers on the day before they were arrested on separate charges, and saw drugs and weapons while there. He claims that his attorney allowed government agents to listen in on the phone call without Williams' knowledge or consent. Petitioner offered affidavits of two family members to whom counsel allegedly admitted this error.

At the evidentiary hearing, petitioner offered his own testimony as well as that of his wife concerning the proffer session.[7] The government offered opposing testimony from Greg Hughes, Esq., petitioner's trial counsel, Richard Horne, Esq., petitioner's sentencing counsel [who negotiated the post-conviction proffer agreement], along with the case agent and the drug task force agent who were also present during the original proffer. According to each of the government's witnesses, prior to the beginning of the proffer session Williams' trial counsel introduced all of the persons who were present in his office to participate in the proffer, and it was the case agent, FBI special agent Alan DuCote, who conducted the telephone interview, asking all or substantially all of the questions with occasional interjections and clarifications by

---

[7] It was unclear why Williams was not personally present in Mobile for the proffer session. The record reflects that Williams was on conditions of release at the time of the session and had returned to live in Atlanta pending trial. Mr. Hughes testified that on prior occasions he had encountered some difficulty in getting Williams to travel to Mobile to meet and discuss the case, although Mr. Hughes was unable to specifically recall why Williams participated in the proffer by telephone.

Williams' attorney. The court finds the testimony of these witnesses to be credible and further finds that Williams knew he was being interviewed by Agent DuCote, with whom he had previously spoken. Even if the court were to find it plausible–despite trial counsel's credible testimony that he explained the proffer to defendant in detail before March 10, 2005, and the testimony of the government's witnesses that he did so again at the start of the proffer call–that Williams did not understand the nature of the proffer, the court finds it inconceivable that Williams honestly believed that he was speaking to his attorney alone during the telephone call of March 10, 2005, and thus believed that his statements were subject to the attorney-client privilege.

The court finds the testimony of the government's witnesses fully credible, and therefor discounts the testimony of the Mr. and Mrs. Williams.[8] The court finds that Williams was aware of the nature of the proffer, that he engaged in it knowingly and voluntarily, and that his attorney was not thereby ineffective. Given petitioner's failure to establish deficient representation under the first prong of the Strickland standard, the court need not decide the issue of prejudice.[9] The

---

[8] Although petitioner and his wife were clear in their testimony, the court notes inconsistencies between Mrs. Williams' affidavit and her testimony at the hearing. For example, according to Mrs. Williams' affidavit, counsel confided in her at lunch, during a break in the proceedings, in the presence of another family member. According to her testimony at the hearing, the alleged communication occurred to her alone, in the hallway of the courthouse following the close of the trial. Petitioner did not offer the testimony of the other affiant, despite issuance of a subpoena for his attendance.

[9] Evidence on prejudice prong focused on the use of matters disclosed in the proffer session against petitioner at trial. As petitioner has only made a claim of ineffective assistance of counsel on this point, and would have been precluded from bringing other claims on this issue by the appeal waiver in his post-conviction proffer agreement, the issue of whether the government used his statements against him in violation of the proffer agreement is irrelevant to any issue other than the Strickland prejudice prong.

undersigned finds that petitioner's first ground for relief is without merit and thus should be denied.

<u>Ineffective Assistance of Trial Counsel–Multiplicity</u>

Petitioner's second ground claims ineffective assistance by trial counsel, on the basis that his attorney erred by failing to challenge the allegedly multiplicitous counts in the indictment. He argues similarly in ground five that his appellate counsel erred by failing to challenge the conviction on the same basis. He bases this argument on the inclusion of two conspiracy charges in the indictment, with overlapping time frames. One conspiracy count involved marijuana and the other involved methamphetamine.

Petitioner's trial counsel was not ineffective for failing to argue such a "multiplicity" or double jeopardy challenge. There was adequate authority at the time demonstrating the frivolity of such an argument that a reasonable attorney's failure to make such a motion is not an instance of deficient performance. *See* <u>United States v. Felix</u>, 503 U.S. 378 (1992)(mere overlap of proof between two prosecutions does not establish double jeopardy.); <u>United States v. Boldin</u>, 772 F.2d 719, 726 (11th Cir. 1985)("[A] substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar."); <u>United States v. Mulherin</u>, 710 F.2d 731, 740 (11th Cir. 1983)("[T]hat much of the same evidence served 'double duty' in proving the two [conspiracy] offenses charged is of no consequence.")[10]

---

[10] The government argues that the jury "found" two conspiracies. The record does not reflect that the jury had been instructed that it could find a single conspiracy rather than multiple conspiracies as charged, nor that it must acquit defendant if it found a single conspiracy rather than separate conspiracies.

Ineffective Assistance of Trial, Sentencing and Appellate Counsel–drug type and quantity

In ground three, petitioner argues that his trial counsel was ineffective for failing to request a jury instruction on the definition of "Ice" or "pure" methamphetamine. He similarly argues, in grounds four and five, that his sentencing and appellate counsel were likewise ineffective for failing to challenge the jury's finding of quantity of "ice" and methamphetamine on the grounds that they were not supported by the evidence.[11]

There was no testimony directly addressing the purity of the methamphetamine with which Williams was charged; none was seized or tested, as the evidence consisted of testimony from witnesses as to what they saw. The witnesses' identification of "ice" was not based directly on a lay opinion as to the percentage purity, but upon the visual appearance of the methamphetamine. [12]

Nonetheless, petitioner can not demonstrate prejudice on any of these ineffective assistance claims related to drug type or quantity. The only relevance of the finding concerning the amount of "pure" or "ice" methamphetamine was in calculating the drug quantity for sentencing purposes. The trial court based its sentencing finding of drug quantity on the jury's

---

[11] The notes to the drug quantity table following U.S.S.G. § 2D1.1 state " '[i]ce' for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1, Note (C).

[12] "Ice" gets its name from the fact that it looks like broken glass; however, there was no evidence in the record that all methamphetamine that looks that way is of 80% or greater purity. The jury's ability to make an accurate determination under the "reasonable doubt" standard would be questionable even had the jury been aware of the definition it was to apply. It can reasonably be said, therefore, that the jury's finding of the amount of "ice" answers a more colloquial question than the more technical question which the court was bound to answer for purposes of the Guidelines.

finding under the "beyond a reasonable doubt" standard that petitioner's conspiracy involved 36 grams of 'ice.' However, the court was not bound to do so. United States v. Booker, 543 U.S. 220 (2005), did not require the court to give that question to the jury; where as here the court applied the Guidelines in an advisory manner, there is no constitutional impediment to its making sentencing findings, including findings on drug quantity, by a preponderance of the evidence. Id. at 267-68; *see* U.S. v. Melvin, 190 Fed.Appx. 865(11th Cir. 2006)(even if drug quantity submitted to jury, trial court not bound to accept that figure for sentencing, but can find higher quantity under preponderance standard).

The testimony of witnesses Sheldon McKenzie, Shane Godwin, and Damien Mosley totaled at least 164 ounces of "ice"[13] as well as a substantial quantity of a mixture containing methamphetamine; if the court had not relied on the jury's findings on quantity of methamphetamine and the 36 grams of ice, it would have been fully justified in finding a quantity significantly higher at sentencing.[14] *See e.g.* U.S. v. Verdin-Garcia, 516 F.3d 884, 896-

---

[13] One gram = 0.0352739619 ounces. Thus, there are between 28 and 29 grams per ounce.

[14] Additionally, the evidence adduced at trial would have supported a higher amount of regular methamphetamine than the amount for which the court held defendant responsible.

> For calculations under the Sentencing Guidelines where several different drugs are involved, drugs other than marijuana are convertible into "marijuana equivalents" so that apples may be added to apples to determine an offense level. Under the Guidelines, 1 gram of methamphetamine mixture is equivalent to 2 kilograms of marijuana, while 1 gram of "ice" or 1 gram of methamphetamine (actual) is equivalent to 20 kilograms of marijuana. U.S.S.G. § 2D1.1, cmt. 10 (2006). "Ice" is a methamphetamine mixture of at least 80% purity (at least 80% d-methamphetamine hydrochloride and no more than 20% cutting agent), and methamphetamine (actual) means the actual weight of the pure d-methamphetamine hydrochloride in a mixture. Id., § 2D 1.1(c) nn.B, C.

97 (10th Cir. 2008)(finding that, even if the evidence were insufficient to calculate the amount of "ice," the evidence on methamphetamine quantity was more than sufficient to support the sentence imposed); U.S.S.G. § 2D1.1 cmt. 12 ("Where there is no drug seizure ... the court shall approximate the quantity of the controlled substance."). Petitioner's arguments concerning drug quantities and his attorney's failure to request a jury instruction on the term "ice" or "pure" methamphetamine are without merit.

### Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied, **in part**, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595,

---

U.S. v. Verdin-Garcia, 516 F.3d 884, 896 (10th Cir. 2008). Methamphetamine refers to a mixture or substance containing a detectable amount of methamphetamine.

1604, 146 L.Ed.2d 542 (2000), and, in part, on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" id.; *see also* id. at 483-484 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were ' "adequate to deserve encouragement to proceed further." ' "); *see* Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." ' "). The claims as to which no hearing was granted are not such that reasonable jurists could disagree with the proposed disposition.

With regard to that ground for relief as to which the court held an evidentiary hearing and made findings of fact upon the evidence presented, factual findings are reviewed under a clear error standard. Lynn v. U.S., 365 F.3d 1225, 1232 (11th Cir.2004). The undersigned has carefully reviewed the evidence presented and is of the opinion that the findings of fact are fully supported by the record. It is Recommended that the court find that the claims raised by the petitioner, following the hearing and findings of fact on petitioner's Count One, are not such that reasonable jurists could differ as to the appropriate disposition of his claims or that his claims deserve encouragement to proceed further, and are thus due to be Denied.

## Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that petitioner's Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that a Certificate of Appealability be DENIED.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this 3rd day of March 2010.

/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added)  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.